**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
                           )
               Plaintiff, )
                           )
             v. )         1:09CV576
                           )
CITY OF GREENSBORO, )
                           )
             Defendant. )

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on the parties' respective Motions for Partial Summary Judgment (Docket Entries 9, 15). (See Docket Entry dated July 28, 2010; Fed. R. Civ. P. 72(b)(1).) The Equal Employment Opportunity Commission ("EEOC") brought this action to assert claims that Defendant violated: 1) the Age Discrimination in Employment Act ("ADEA"), by failing to hire Terry Pearson; and 2) a regulation implementing the ADEA, by failing to preserve documents regarding that decision. (See Docket Entry 1.) Defendant seeks summary judgment on the age discrimination claim (Docket Entry 9) and the EEOC seeks summary judgment on the record-preservation claim (Docket Entry 15).

The EEOC has identified sufficient direct evidence to permit a reasonable fact-finder to conclude that Defendant failed to hire Pearson "because of" his age and, alternatively, has presented sufficient evidence of a prima facie case of age discrimination and of pretext to proceed to a jury via the McDonnell Douglas indirect proof scheme; accordingly, the Court should deny Defendant's Motion

for Partial Summary Judgment. The EEOC, however, has failed to show that the record evidence, taken in the light most favorable to Defendant, warrants judgment as a matter of law for the EEOC on its record-preservation claim; the Court therefore should deny the EEOC's Motion for Partial Summary Judgment.

## FACTUAL BACKGROUND[1]

### Failure to Hire Pearson

In the summer of 2007, Defendant hired Lewis Cheatham, Erich Todd Craddock, and Stacey Wilson as Electronic Processes Specialists in its Technical Systems Division (the "Division") (primarily to work on a 911 communications system). (Docket Entry 16-3 at 1, 17, 18, 22; Docket Entry 16-4 at 1, 6-8.) Defendant, through Division Manager Bechinger Martin, selected Cheatham, Craddock, and Wilson (whose ages all fell below 40) over Pearson (who was 58). (Docket Entry 16-3 at 3, 13; Docket Entry 17-4 at 19, 24; Docket Entry 17-5 at 5, 13, 23, 33.) According to Defendant's vacancy notice, the position(s) in question entailed "responsib[ility] for the service and maintenance of all equipment associated with the operation of an 800MHz radio system . . . ." (Docket Entry 16-3 at 1.)

Under the heading "Minimum Qualifications" (id.), that notice listed in relevant part:

---

[1] Consistent with the authority in the Discussion section below, the recited facts reflect the evidence in the light most favorable to the non-movant (i.e., the EEOC in connection with the age discrimination claim and Defendant in connection with the records-preservation claim). The question of whether a reasonable fact-finder ultimately would credit the cited evidence or would view such evidence in any particular light must await another day.

1) "Experience in 800MHz Smartzone Simulcast Trunked Radio system maintenance as it relates to diagnostics, preventive maintenance, repairs, [and] troubleshooting" (id.);

2) "Thorough knowledge of electronic theory and practice involved in installation, testing, diagnosis, and repair of complex electronic circuitry" (id.);

3) "Ability to read and comprehend wiring diagrams and schematic drawings related to electronic equipment, maintenance contracts" (id.); and

4) "Must hold a FCC license or the ability to obtain within 6 months of employment" (id.).[2]

Cheatham and Wilson "did not have experience in repair and maintenance of 800 MHz Smartzone Simulcast Trunked Radio systems." (Docket Entry 16-3 at 18, 23.)[3]  Neither did Pearson.  (Docket

_____

[2] The parties' summary judgment briefs do not address any of the other "Minimum Qualifications" listed in the vacancy notice.

[3] The EEOC apparently did not serve Defendant with a request for admission as to Craddock's "experience in repair and maintenance of 800 MHz Smartzone Simulcast Trunked Radio systems." (See Docket Entry 16-3 at 18.)  The EEOC, however, still asserts that Defendant "admitted Craddock did not have experience repairing the 800 MHz system." (Docket Entry 17 at 3.)  In support of this assertion, the EEOC points to several pages of Bechinger Martin's deposition (see id.) that, upon inspection, do not warrant the conclusion drawn by the EEOC on this subject (see Docket Entry 17-4 at 21-22).  The EEOC also cites as evidence of Defendant's alleged admission as to Craddock's credentials a page from the deposition of Larry Frye, one of Defendant's employees who interviewed Craddock. (See Docket Entry 17 at 3.)  Frye did answer "No," when asked if Craddock had "experience with the 800-megahertz system and repairs." (Docket Entry 17-4 at 32.)  The EEOC, however, has failed to explain how Frye's view of Craddock's experience could constitute an admission by Defendant, particularly given that (as set out below) Bechinger Martin apparently did not rely on Frye's judgment in making the hiring decision.  To the extent the EEOC would rely on testimony from the deposition of another interviewer, James Ewing, about Craddock's experience with such matters, the same limitation would apply.

Entry 16-5 at 9.)  Pearson did have an FCC license (id.), whereas Cheatham, Craddock, and Wilson did not (Docket Entry 16-3 at 18, 23).[4]  Pearson also had over 30 years of experience doing electronics repair work (primarily on televisions and other consumer appliances and devices). (Docket Entry 17-4 at 2-8.)  In addition, during his employment with General Electric from 1980-83, Pearson read schematic and wiring diagrams in connection with the testing of large-scale electronic equipment, including oil well drilling machinery and transformers.  (Docket Entry 17-4 at 4.)[5]

Prior to Bechinger Martin's hiring decision, she and three employees of Defendant, James Ewing, Larry Frye, and Wendy Gregory, interviewed Cheatham, Craddock, Wilson, and Pearson. (Docket Entry 17-4 at 17-18.)  Each interviewer scored each candidate. (Id. at 18.)  Upon compilation of the scores, Cheatham "had 395 total

---

[4] According to evidence cited by the EEOC, Cheatham, Craddock, and Wilson failed to acquire their FCC licenses within six months of their hiring; however, the EEOC has not identified any evidence that, at the time of their hiring, Defendant had reason to (or did) believe that said individuals lacked the ability to obtain FCC licensing within six months.  (See Docket Entry 17 at 4.)

[5] The EEOC has acknowledged that Cheatham "had seven years of experience repairing electronics circuitry and reading schematic diagrams in his previous employment," but has suggested that Craddock and Wilson lacked the electronics repair experience required in the vacancy notice; however, the record citations offered by the EEOC do not support its assertions. (Docket Entry 17 at 4.)  For example, the EEOC declared that "Defendant admitted Wilson had no electronic repair experience" and identified page 145 of Bechinger Martin's deposition as its evidence of that proposition.  (Id.)  In fact, Bechinger Martin's testimony on that page indicates only that Wilson lacked repair experience on radios, not electronics.  (See Docket Entry 17-4 at 24.)  Similarly, the EEOC asserted that Craddock "only installed computer hardware and software" and cited pages 15-29 of his deposition as its evidence.  (Docket Entry 17 at 4 (emphasis added).)  Contrary to the EEOC's assertion in this regard, in the cited pages of his deposition, Craddock described experience beyond installation, including "repair[ing]" and "troubleshoot[ing]" computers, as well as "replac[ing]" broken equipment related to part of the 911 system.  (Docket Entry 17-5 at 17.)

-4-

points," Craddock had "385," Pearson "had 341," and Wilson "had 270." (Id. at 24; see also Docket Entry 16-3 at 26.)

Frye recommended to Bechinger Martin that she hire Cheatham and Pearson because, "even though [Pearson] did not have trunking experience, he had general electronic knowledge . . . that [the Division] could build upon. And he had a business, so he knew what it was to deal with customers and to satisfy their needs, and [the Division] needed that." (Docket Entry 17-4 at 33.) Ewing told Bechinger Martin that, "if [the Division was] going to have two positions, [it] should hire [Cheatham] and [Pearson]." (Id. at 27.) Only Cheatham had experience Ewing "want[ed]" and, thus, he initially recommended that the Division "advertise again, but she said [the Division] w[as] going to hire two people. So based on that, [Ewing] recommended [Pearson] as second." (Id.) In his view, "Cheatham had the most qualifications [of the interviewees] . . . [and Pearson] had the second most." (Id. at 28.)[6]

During her deposition, Bechinger Martin responded as follows when asked why she chose Wilson over Pearson, notwithstanding the fact that Pearson received a substantially better composite score from the interviewers: "It was based upon [Pearson's] experience with television and VCR repair – electronic repair, and those repairs were dated. That technology's dated. And the two higher-score people had experience in the current technology platforms." (Docket Entry 11 at 148; see also id. at 138 ("Q [to Bechinger

---

[6] Gregory was not asked for and did not make a recommendation as to which candidate(s) Bechinger Martin should hire. (Docket Entry 18-6 at 26.)

Martin]. Why did you decide not to hire [Pearson]? A. We scored. He was very high in electronics repair of the – of the televisions and VCRs. He just did not have radio repair or radio experience other than ham operation.".) Bechinger Martin denied "mak[ing] [her] hiring decision based on Terry Pearson's age." (Id. at 178.)

Jennifer Williams-Hickey, a Division employee, however, reported that Bechinger Martin told Williams-Hickey that:

> [Bechinger Martin] thought maybe [Pearson] was friends with Richard [Martin] and that if [Bechinger Martin] hired somebody . . . [Pearson's] age, she would have to go through all this training only to have him retire in a few years. And she wanted to hire a group of people that were going to be there for the long haul and not somebody just coming in and then leave shortly and then she'd have to do the whole hiring process over again.

(Docket Entry 17-5 at 4.)[7]

Pearson filed an administrative charge with the EEOC alleging that Defendant engaged in age discrimination by failing to hire him. (Docket Entry 16-3 at 27.) In its response to the EEOC on April 7, 2008, Defendant (through its attorney) stated that "Pearson was not hired for the sole reason that he was not the most suitable candidate to fill the position." (Docket Entry 16-4 at 1.) The response described how Defendant had interviewed five candidates and then stated:

---

[7] According to Williams-Hickey, "Richard Martin was a technician that worked [in the Division] . . . [who] retired due to [Bechinger Martin]." (Docket Entry 17-5 at 3.) Williams-Hickey claimed that Bechinger Martin "rode [Richard Martin] . . . [and that Bechinger Martin] told [Williams-Hickey] that she wanted him gone." (Id.) In Williams-Hickey's opinion, Bechinger Martin wanted to get rid of Richard Martin, not because of his age, but "[b]ecause she didn't like him. He didn't kiss her butt. He disagreed with her, and you're not allowed to disagree with [Bechinger Martin]." (Id.)

> The candidates' responses were evaluated on a point
> scale. The successful candidate garnered the most
> points. Regrettably, [Pearson]'s responses were ranked
> third out of five candidates. Moreover, [Pearson's]
> experiences centered on repairing televisions and video
> cassette recorders. The successful candidate had
> relevant experience with 800 MHz radios . . . . The
> successful candidate not only had more relevant
> technological experiences, but had experience dealing
> with public safety and law enforcement agencies. The
> successful candidate's interview performance and relevant
> professional experiences made him the most suitable
> person for the position.

(<u>Id.</u> at 2.)[8]

<u>Failure to Preserve Records</u>

According to the EEOC's Complaint, "[s]ince at least March 2007, Defendant has violated 29 C.F.R. 1627.3(b)(1)(i), enacted pursuant to Section 7(a) of the ADEA, 29 U.S.C. § 626(a), by failing to make or preserve records, for the requisite one-year period, pertaining to the failure or refusal to hire Mr. Pearson." (Docket Entry 1 at 3.) The Complaint identifies such records as "including but not limited to scoring sheets and interviews [sic] notes, related to Defendant's hiring of applicants for the Electronic Processes Specialist position." (<u>Id.</u>)[9]

On October 15, 2008, the EEOC asked Defendant to submit, in relevant part, "all questions, answers, and scores on each of the five candidates (including [Pearson]) from the . . . interviews

---

[8] At no point did the response acknowledge that Defendant had filled three Electronic Processes Specialist positions. (<u>See</u> Docket Entry 16-4 at 1-3.)

[9] Among the items of requested relief in the Complaint, the only matter (other than costs) that appears to bear a connection to the record-preservation claim consists of the request that the Court "[o]rder Defendant to make and preserve records required by the Commission pursuant to Section 7(a) of the ADEA, 29 U.S.C. § 626(a), and 29 C.F.R. 1627.3(b)(1)(i)." (Docket Entry 1 at 4.)

conducted by Bechinger Martin, James Ewing, Larry Frye, and Wendy Gregory." (Docket Entry 16-4 at 5.)[10]  On December 10, 2008, the EEOC sent another request to Defendant, seeking (in relevant part) "all interview questions that were asked to each candidate during the interview process . . .[,] all rating sheets on each candidate[,] and any other relevant documents." (Id. at 10.)  Via a letter dated December 29, 2008, from its counsel, Defendant advised the EEOC that it "d[id] not have a copy of the interview questions that were asked to each candidate during the interview process . . . [or] a ranking by each panel member of each candidate's responses to the interview questions." (Id. at 11.) Defendant, however, provided the EEOC with "a copy of the composite scoring and ranking of the applicants." (Id.)

On January 29, 2009, the EEOC issued a subpoena to Defendant demanding "all interview questions and answers that were asked to each candidate during the interviews for the position of Electronic Process Specialist . . . [and] documentation on how each committee member ranked each candidate on each question." (Id. at 13.)  In response, Defendant (via a letter from its attorney dated February 6, 2009) repeated its above-quoted statement from its letter of December 29, 2008.  (See id. at 14.)  "[O]n February 11, 2009[,] [d]uring [an] on-site investigation [by the EEOC], Defendant produced interview questions and scoring sheets for Pearson, Wilson

_____

[10] The EEOC has asserted, without citation to evidence, that, in response to its request on October 15, 2008, Defendant "failed to submit the interview questions, answers and scoring sheets for the candidates." (Docket Entry 16 at 5.) Defendant does not appear to contest this assertion. (See Docket Entry 18.)

-8-

and Craddock." (Docket Entry 16-8 at 4.) "Defendant failed to submit notes taken by Defendant's interview panelists during Pearson's interview" and "Defendant is no longer in possession of scoring sheets completed by Larry Frye, James Ewing, and Bechinger Martin during the interview of Lewis Cheatham." (Docket Entry 16-3 at 16, 17, 22.) Defendant, however, "submitted scoring sheets completed by Wendy Gregory, one of the interview panelists who interviewed Lewis Cheatham . . . ." (Id. at 17, 22.)[11]

Bechinger Martin and Ewing "d[id]n't remember" if they took notes during the interviews. (Docket Entry 16-5 at 21; Docket Entry 16-6 at 21.) Gregory testified that she did and that she "think[s] [she] was asked to give all of [her] notes to Bechinger Martin when the process was completed." (Docket Entry 18-6 at 50-51.)[12] According to Gregory, the file in which she stored the notes went missing "[r]ight after all of the interviews had taken place." (Id. at 52.) Gregory later clarified that she noticed the absence of the file within a month of the interviews, when someone asked

_____

[11] Defendant also preserved the applicant referral packet which documented the candidates considered and the hiring decision(s). (See Docket Entry 18-2 at 71-75.) According to Defendant, that packet sets out Bechinger Martin's rationale for not hiring Pearson; however, Defendant has failed to cite record support for that assertion. (Docket Entry 18 at 3.) Bechinger Martin identified the packet during her deposition (Docket Entry 18-2 at 71-72), but did not discuss its contents as they might relate to her rationale for failing to hire Pearson, at least not in the pages cited by Defendant in this portion of its brief (see Docket Entry 18 at 3 (citing Docket Entry 18-2 at 72-75, 80)). Defendant neither attached a copy of the packet to its brief (see Docket Entry 18), nor included such exhibits with another copy of Bechinger Martin's deposition it previously filed with the Court (see Docket Entry 11).

[12] After the decision not to hire Pearson, Gregory's last name changed to Autry. (Docket Entry 18-6 at 3.)

for her notes.  (<u>Id.</u> at 52-53.)  Gregory averred that the file reappeared in her office sometime prior to July 2009, but she did not look to see what documents remained in it.  (<u>Id.</u> at 53-55.)[13]

<u>DISCUSSION</u>

<u>Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In making this determination, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000).  <u>Accord</u> <u>Matvia v. Bald Head Island Mgt., Inc.</u>, 259 F.3d 261, 266 (4th Cir. 2001) ("The court must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in the non-movant's favor.").

"[T]here is no burden upon 'the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact.'  Rather, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the

_____

[13] According to the EEOC, "Frye testified that he took notes during the interviews, but he discarded them."  (Docket Entry 16 at 8.)  However, in the portions of Frye's deposition quoted by the EEOC to support this assertion, Frye actually discussed notes from earlier telephone interviews conducted to identify who would receive in-person interviews.  (<u>Compare</u> <u>id.</u> <u>with</u> Docket Entry 16-6 at 25.)  Frye's testimony does not clearly indicate whether he took notes during the in-person interviews.  (<u>See</u> Docket Entry 16-6 at 25.)

nonmoving party's case.'" <u>Carr v. Deeds</u>, 453 F.3d 593, 608 (4th Cir. 2006) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)) (internal emphasis omitted). Conversely, "[t]he party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but 'must come forward with specific facts showing that there is a genuine issue for trial.'" <u>Emmett v. Johnson</u>, 532 F.3d 291, 297 (4th Cir. 2008) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)). <u>See also</u> <u>Francis v. Booz, Allen & Hamilton, Inc.</u>, 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

Failure to Hire Pearson

"The ADEA provides, in relevant part, that '[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age.'" <u>Gross v. FBL Fin. Servs., Inc.</u>, 129 S. Ct. 2343, 2350 (2009) (quoting 29 U.S.C. § 623(a)(1)) (brackets, ellipses, and emphasis in original). "The words 'because of' mean 'by reason of: on account of.' . . . [U]nder the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." <u>Id.</u>

"Generally speaking, a plaintiff may avert summary judgment and establish a claim for intentional . . . age discrimination through two avenues of proof." <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 284 (4th Cir. 2004) (en banc). "First, a plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that . . . age discrimination motivated the employer's adverse employment decision." <u>Id.</u>[14] "The second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." <u>Id.</u> at 285 (citing <u>Texas Dep't of Cmty. Affairs</u>

_____

[14] Even prior to the United States Supreme Court's decision in <u>Gross</u>, the United States Court of Appeals for the Fourth Circuit had recognized that, in the context of the ADEA, "motivated" meant "but-for" causation, i.e., that age "'must have actually played a role in the employer's decisionmaking process and had a <u>determinative</u> influence on the outcome.'" <u>Hill</u>, 354 F.3d at 286 (internal citation omitted) (emphasis added) (quoting <u>Reeves</u>, 530 U.S. at 141, which in turn had quoted <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 610 (1993)). Indeed, the Fourth Circuit had adopted this understanding of the ADEA's causation standard much earlier. <u>See</u> <u>Cline v. Roadway Express, Inc.</u>, 689 F.2d 481, 485 (4th Cir. 1982) ("[T]he narrow motivational [issue] central to any ADEA claim . . . [is] whether [the plaintiff] was discharged because of his age or more precisely, whether age was a <u>determining</u> factor in the sense that <u>but for</u> his employer's motive to discriminate against him because of his age, he would not have suffered the unfavorable action." (emphasis added) (internal citations, parentheses, and quotation marks omitted)). In this respect, the Fourth Circuit differed from some other circuits that, in pre-<u>Gross</u> ADEA cases, had permitted age to qualify as a "motivating" factor even if it did not play a determinative role in the adverse action. <u>See, e.g.</u>, <u>Gorzynski v. Jet Blue Airways Corp.</u>, 596 F.3d 93, 106 (2d Cir. 2010) (holding that <u>Gross</u> changed meaning of "motivating" from that previously understood in Second Circuit). Accordingly, the use of the word "motivating" to describe the ADEA's causation standard in Fourth Circuit cases preceding <u>Gross</u> does not mean that such decisions lack continuing validity.

v. Burdine, 450 U.S. 248, 252, 252-53 (1981), and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973)).[15]

The Court should deny Defendant's Motion for Partial Summary Judgment (Docket Entry 9), because the record evidence raises material questions of fact as to the EEOC's age discrimination claim under either the direct or indirect methods of proof.

*Direct Evidence*

In this case, the EEOC has presented direct evidence from which a reasonable fact-finder could conclude that age served as a "determinative" or "but-for" cause of Bechinger Martin's decision not to hire Pearson. Specifically, as detailed above in the Facts section, the EEOC has come forward with testimony from Division employee Williams-Hickey that Bechinger Martin expressed to Williams-Hickey the concern that, "if [Bechinger Martin] hired somebody . . . [Pearson's] age, she would have to go through all

_____

[15] The United States Supreme Court "has not definitively decided whether the evidentiary framework of McDonnell Douglas Corp. utilized in Title VII cases is appropriate in the ADEA context." Gross, 129 S. Ct. at 2349 n.2 (internal citation omitted). The United States Court of Appeals for the Fourth Circuit, however, has endorsed the continued utilization of the McDonnell Douglas indirect proof scheme in ADEA cases in at least one unpublished decision after Gross. See Bodkin v. Town of Strasburg, Va., 386 Fed. Appx. 411 (4th Cir. 2010). Judges of this Court and of other district courts in the Fourth Circuit also have taken that approach, see, e.g., Pressley v. Caromont Health, Inc., No. 3:09-cv-460-FDW-DSC, 2010 WL 4625965, at *2 (W.D.N.C. Nov. 3, 2010) (Whitney, J.) (unpublished); Wall v. Alderman Co., No. 1:08CV785, 2009 WL 5171819, at *5-6 (M.D.N.C. Dec. 21, 2009) (Dixon, M.J.) (unpublished), aff'd and adopted, No. 1:08CV785 (M.D.N.C. Mar. 26, 2010) (Tilley, S.J.) (unpublished), as have all federal appellate courts that have reached the issue, see Jones v. Oklahoma City Pub. Sch., 617 F.3d 1273, 1278-79 (10th Cir. 2010) ("[W]e conclude that [Gross] does not preclude our continued application of McDonnell Douglas to ADEA claims . . . [and, in so holding,] join all of our sibling circuits that have addressed this issue." (citing published decisions from First, Second, Third, Fifth, and Sixth Circuits affirmatively embracing McDonnell Douglas analysis in ADEA cases after Gross)).

-13-

this training only to have him retire in a few years.  And she wanted to hire a group of people that were going to be there for the long haul and not somebody just coming in and then leave shortly . . . ."  (Docket Entry 17-5 at 4 (emphasis added).)  This testimony constitutes "direct evidence that the employer announced, or admitted, or otherwise unmistakably indicated that age was a determining factor . . . ."  <u>Cline v. Roadway Express, Inc.</u>, 689 F.2d 481, 485 (4th Cir. 1982).[16]

The United States Court of Appeals for the Fourth Circuit has held that, when the record contains such direct evidence of age discrimination, the fact-finder must decide the causation issue, including by weighing the plaintiff's evidence against other "evidence [which] tends to suggest any other legitimate motivation

---

[16] Contrary to Defendant's suggestion (<u>see</u> Docket Entry 10 at 3), Williams-Hickey's testimony in this regard does not represent inadmissible hearsay; rather, because Bechinger Martin acted as Defendant's agent on the hiring decision, the above-quoted statement constitutes an admission of a party opponent.  <u>See</u> <u>EEOC v. Watergate at Landmark Condo.</u>, 24 F.3d 635, 638-40 (4th Cir. 1994) (discussing Fed. R. Evid. 801(d)(2)).  However, other testimony from Williams-Hickey about comments Gregory allegedly attributed to Bechinger Martin (which the EEOC has cited as further direct evidence (<u>see</u> Docket Entry 17 at 9-10)) does appear inadmissible, due to its second-hand nature.  In addition, the EEOC has not shown that testimony from Cheatham and Wilson about remarks allegedly made by Frye (<u>see</u> <u>id.</u> at 9-10 & n.3) would qualify as admissible direct evidence.  Specifically, in the alleged comments, Frye did not seem to express any age-based bias he held (indeed, according to other evidence credited by the EEOC, Frye urged Bechinger Martin to hire Pearson).  Instead, in these alleged remarks, Frye apparently speculated about why Bechinger Martin might not have hired Pearson.  Under these circumstances, in resolving Defendant's motion for partial summary judgment, the Court should not treat any record material, beyond the above-quoted admission Bechinger Martin allegedly made to Williams-Hickey, as direct evidence of age discrimination.

for the challenged action . . . ." Id.[17]  See also Loveless v.
John's Ford, Inc., 232 Fed. Appx. 229, 234 (4th Cir. 2007) (ruling
that "there was ample direct evidence that [plaintiff's] age was a
motivating factor in [supervisor's] decision . . . to discharge
[plaintiff] . . . [where plaintiff's evidence showed that
supervisor said] that he was 'replacing all his department heads
. . . [and] needed younger, more aggressive Managers, people that
he could groom to the way that he does business" and "referred to
. . . another older employee as 'an F'n dinosaur' [who] . . . 'is
next' and 'should have been gone a long time ago'" (internal
brackets omitted)); EEOC v. Warfield-Rohr Casket Co., Inc., 364
F.3d 160, 163 (4th Cir. 2004) (observing that "[company owner's]
alleged statement to [complaining employee] that he was 'getting
too old' and that . . . a much younger employee 'could give [owner]
more years' clearly reflect[ed] [owner's] reliance on [complaining
employee's] age as one of the reasons for his termination"
(internal ellipses and dashes omitted)).

Moreover, at least three federal appellate courts have issued
rulings since Gross indicating that district courts should deny

---

[17] In so ruling, the Cline Court presaged the United States Supreme Court's
rejection in ADEA cases of the burden-of-persuasion-shifting scheme authorized
for Title VII cases by the judgment in Price Waterhouse v. Hopkins, 490 U.S. 228
(1989). Compare Gross, 129 S. Ct. at 2348 ("We must first determine whether the
burden of persuasion ever shifts to the party defending . . . [a] discrimination
claim brought under the ADEA. We hold that it does not." (internal footnote
omitted)) with Cline, 689 F.2d at 485-86 (ruling that, under ADEA, fact-finder
must resolve "motivational issue without resort to any judicially created
presumption . . . [and that evidence of non-age-based rationales for adverse
employment action are] properly assessed neither as evidence offered to 'dispel'
a judicial presumption, nor to 'prove' an affirmative defense").

summary judgment, if the record contains direct evidence that the decision-maker manifested age-based bias in connection with the adverse employment action about which the plaintiff complains, even if the record also contains evidence of reasons other than age for said action. See Mora v. Jackson, 597 F.3d 1201, 1203-04 (11th Cir. 2010) ("conclud[ing] that a reasonable juror could accept that [decision-maker] made the discriminatory-sounding remarks and that the remarks are sufficient evidence of a discriminatory motive which was the 'but for' cause of Plaintiff's dismissal" and holding that "[s]ummary judgment for Defendant was therefore incorrect," notwithstanding defendant's evidence that Plaintiff "still would have been terminated for poor job performance"); EEOC v. TIN, Inc., 349 Fed. Appx. 190, 192-93 (9th Cir. 2009) (reversing summary judgment order, despite evidence that younger employee selected for position had better qualifications, because testimony that "supervisors with decision-making authority over [the complaining employee] made comments from which a jury could find that they harbored discriminatory animus toward older workers . . . provided sufficient evidence from which a jury could find, 'by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment actions'" (quoting Gross, 129 S. Ct. at 2352) (internal brackets omitted)); Baker v. Silver Oak Senior Living Mgmt. Co., L.C., 581 F.3d 684, 688-89 (8th Cir. 2009) (reversing summary judgment order for defendant and "conclud[ing] that [plaintiff] ha[d] presented a submissible case of age discrimination for determination by a jury . . . [in light] [m]ost

significant[ly] [of] statements of [supervisors], who participated
in the decision to terminate [plaintiff], evincing a preference for
the employment of younger workers over persons in the class
protected by the ADEA," notwithstanding defendant's evidence as to
non-discriminatory reasons for plaintiff's firing.[18]

On the other hand, the undersigned Magistrate Judge could
locate only one federal appellate decision since <u>Gross</u> affirming a
summary judgment order for an employer despite direct evidence of
a decision-maker's age-related bias connected to the challenged
employment action. See <u>Lindsey v. Walgreen Co.</u>, 615 F.3d 873 (7th
Cir. 2010). In that case, the Seventh Circuit ruled that, "even if
[a supervisory pharmacist] harbored some age-based animus, and even
if that discriminatory motive could be imputed to [the decision-
maker who fired the plaintiff-pharmacist], [the plaintiff-
pharmacist] has not shown that [the defendant-pharmacy chain] fired
her *because of* her age." <u>Id.</u> at 876 (emphasis in original). In
reaching this result, the Seventh Circuit focused on the existence
of "<u>substantial, undisputed evidence</u> in the record [that]
support[ed] [the defendant-pharmacy chain's] assertion that it

---

[18] A number of district courts across the country, including in the Fourth
Circuit, have denied summary judgment for employers in ADEA cases decided after
<u>Gross</u> in analogous contexts. See, e.g., <u>Hennelly v. Florim, USA Inc.</u>, No. 3:09-
0260, 2010 WL 4698647 (M.D. Tenn. Nov. 10, 2010) (unpublished); <u>Marlow v.
Chesterfield Cnty Sch. Bd.</u>, ___ F. Supp. 2d ___, 2010 WL 4453463 (E.D. Va. 2010);
<u>Hird-Moorhouse v. Belgian Mission to the U.N.</u>, No. 03Civ9688, 2010 WL 3910742
(S.D.N.Y. Oct. 5, 2010) (unpublished); <u>Ray v. Forest River, Inc.</u>, No. 2:07CV246,
2010 WL 3167426 (N.D. Ind. Aug. 10, 2010) (unpublished); <u>Slocum v. Potter</u>, No.
3:08-3714-CMC-JRM, 2010 WL 2756953 (D.S.C. June 8, 2010) (unpublished); <u>Drumm v.
CVS Pharmacy, Inc.</u>, 701 F. Supp. 2d 200 (D.R.I. 2010).

fired [the plaintiff-pharmacist] not because of her age but because she violated company policy . . . ." Id. (emphasis added).[19]

The instant case does not involve comparable circumstances that would allow the Court to find as a matter of law that Defendant would have declined to hire Pearson absent consideration of his age. Unlike the employer in Lindsey, Defendant has not identified "substantial, undisputed evidence" of a non-discriminatory rationale for the challenged employment action. To the contrary (as detailed above in the Facts section), the undisputed evidence actually reflects a number of things that conflict with Defendant's assertion that its decision to hire Wilson (in particular) instead of Pearson turned entirely on qualifications, without regard for Pearson's age, including:

1) Wilson received a substantially lower rating than Pearson from Defendant's interview panel;

2) two of the panel members expressly recommended that Defendant hire Pearson instead of Wilson (and Craddock), because Pearson had superior qualifications for the job; and

3) Defendant initially failed to disclose to the EEOC that it had selected not just one, but three substantially-younger individuals over Pearson and that one of the selectees (Wilson)

_____

[19] Specifically, in filling a prescription, the plaintiff-pharmacist "overrode the [defendant-pharmacy chain's] database's drug interaction warning," such that the supervisory pharmacist "feared for the customer's well-being." Lindsey, 615 F.3d at 876. Moreover, due to prior incidents in which the plaintiff-pharmacist had violated company policy, including by filling expired prescriptions, see id. at 874, the decision-maker previously "had warned [her] of harsh consequences . . . if she violated company policy again." Id.

-18-

received a substantially lower rating from the interview panel, while at the same time Defendant emphasized the importance of the rating system in explaining its hiring of Cheatham over Pearson.[20]

Defendant nonetheless contends that, setting aside its qualifications-based explanation for failing to hire Pearson, the Court should grant it summary judgment on the age discrimination claim on the ground that "[t]he evidence taken in a light most favorable to [the EEOC] reveals that Mr. Pearson's application was rejected because: his commute to work would have been too long; he was feared to be friends with Richard Martin . . .; and because of his age." (Docket Entry 10 at 4 (emphasis added).) According to Defendant, such "evidence clearly shows that age was not the determinative or 'but-for' reason for Mr. Pearson's rejection." (Id.) This argument falters for several reasons.

As an initial matter, by conceding that the record would support the view that Defendant failed to hire Pearson "because of his age" (id.), Defendant has admitted – in the very words of the ADEA – that the EEOC can make out an age discrimination claim. See Gross, 129 S. Ct. at 2350 (quoting ADEA as declaring that "'[i]t shall be unlawful for an employer . . . to fail or refuse to hire

_____

[20] The undersigned Magistrate Judge located one, post-Gross district court decision granting summary judgment to an employer on an ADEA claim, notwithstanding the presence of direct evidence of age-related bias connected to the contested employment action. See Didiana v. Harrah's Entm't, Inc., No. 2:08CV1314JCM(PAL), 2010 WL 3951062 (D. Nev. Oct. 6, 2010) (unpublished). As had the Seventh Circuit in Lindsey, the Didiana Court focused on the fact that the plaintiff was fired for "clear violation[s] of company policy" (in that case, as documented by "video surveillance"). Id. at *2. As noted above, no such undisputed justification for Defendant's action appears in the record here.

. . . any individual . . . *because of* such individual's age'"
(brackets, first ellipses, and emphasis in original)).  Further,
the only record material identified by Defendant regarding
consideration of Pearson's commute-time in connection with the
hiring decision (see Docket Entry 10 at 3) consists of Williams-
Hickey's report of Gregory's alleged account of statements
Bechinger Martin supposedly made (see Docket Entry 12 at 9).
Because of its hearsay character, this testimony does not qualify
as admissible evidence.  As a result, the Court need not consider
whether Defendant can avoid summary judgment on the ground that the
length of Pearson's commute played a part in its hiring decision.

The other consideration (besides age) cited by Defendant as
factoring into Bechinger Martin's failure to hire Pearson concerns
his perceived friendship with Richard Martin.  In Williams-Hickey's
non-hearsay testimony recounting Bechinger Martin's alleged
statements about Pearson, Williams-Hickey does refer to that
subject;[21] however, that testimony fails to make clear what, if any,
role the possible link between Richard Martin and Pearson played in

_____

    [21] Specifically, Williams-Hickey's deposition testimony reflects that
Bechinger Martin told Williams-Hickey that:

    [Bechinger Martin] thought maybe [Pearson] was friends with Richard
    [Martin] and that if [Bechinger Martin] hired somebody . . .
    [Pearson's] age, she would have to go through all this training only
    to have him retire in a few years.  And she wanted to hire a group
    of people that were going to be there for the long haul and not
    somebody just coming in and then leave shortly and then she'd have
    to do the whole hiring process over again.

(Docket Entry 17-5 at 4.)

-20-

Bechinger Martin's decision. Under the summary judgment standard, the Court must construe such ambiguities in the EEOC's favor.

Moreover, even if the evidence in question clearly indicated that fear of an association between Richard Martin and Pearson influenced Bechinger Martin, that fact would not entitle Defendant to judgment as a matter of law. As previously discussed, in <u>Gross</u>, the Supreme Court held that the ADEA requires a finding that age constituted a "but-for" cause of the challenged employment action. That holding cohered with prior decisions from the Fourth Circuit (issued over decades) that limited liability under the ADEA to cases in which age served as a "determinative" or "but for" cause of the adverse action. <u>See, e.g.</u>, <u>Hill</u>, 354 F.3d at 286 (holding that age "'must have actually . . . had a <u>determinative</u> influence on the outcome'" (emphasis added) (quoting <u>Reeves</u>, 530 U.S. at 141); <u>Cline</u>, 689 F.2d at 485 ("[T]he narrow motivational [issue] central to any ADEA claim . . . [is] whether [the plaintiff] was discharged because of his age or more precisely, whether age was a <u>determining</u> factor in the sense that <u>but for</u> his employer's motive to discriminate against him because of his age, he would not have suffered the unfavorable action." (emphasis added) (internal citations, parentheses, and quotation marks omitted)).

At the same time, the Fourth Circuit also recognized that age need not serve as the "sole" cause of an adverse action to meet this standard. <u>See</u> <u>Kozlowski v. Hampton Sch. Bd.</u>, 77 Fed. Appx. 133, 145 ("The plaintiff next challenges the district court's use of the phrase 'solely because of age' in the jury charge. . . .

-21-

The court's addition of the term 'solely' was erroneous. 'It is clear that the law requires only that age be a causative or determinative factor in the decision, not the sole reason.'" (quoting <u>Smith v. University of N.C.</u>, 632 F.2d 316, 337 (4th Cir. 1980) (internal ellipses omitted)).[22] As at least two courts have explained, <u>Gross</u> did not alter this well-established principle that age can constitute a "but-for" cause for an adverse action, even if it does not represent the "sole" cause. <u>See</u> <u>Jones v. Oklahoma City Pub. Sch.</u>, 617 F.3d 1273, 1277-78 (10th Cir. 2010) ("[The defendant] argues that in mandating but-for causation, <u>Gross</u> established that 'age must have been the only factor' in the employer's decision-making process. We disagree. . . . [A]n employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference. <u>Gross</u> does not hold otherwise." (internal citations and quotation marks omitted)); <u>Archie v. Home-Towne Suites, LLC</u>, ___ F. Supp. 2d ___, ___ n.4, 2010 WL 4439765, at *5 n.4 (M.D. Ala. 2010) ("<u>Gross</u> requires 'but for' causation. It has long been the law that there is a difference between 'but for' causation and 'sole' causation. <u>Gross</u> refers only to 'but

---

[22] A mathematical analogy illustrates the problem with treating "but-for" cause as equivalent to "sole" cause: If a decision-maker requires a motivational level of 10 in order to take adverse action against an employee and if age-related bias gives the decision-maker 5 levels of motivation, while another consideration gives the decision-maker an additional 5 levels of motivation, then age-related bias and the other consideration both constitute "but-for" causes of the adverse action, although neither qualifies as a "sole" cause.

for' causation." (internal citations omitted) (citing <u>McDonald v.</u>
<u>Santa Fe Trail Transp. Co.</u>, 427 U.S. 273, 282 n.10 (1976))).[23]

In sum, the record contains direct evidence (in the form of
Williams-Hickey's testimony) that Bechinger Martin admitted she did
not hire Pearson because of his age; as a result, Defendant cannot
show an entitlement to judgment as a matter of law on the EEOC's
age discrimination claim.

<i>McDonnell Douglas</i> <i>Indirect Proof Method</i>

Alternatively, the EEOC may defeat Defendant's Motion for
Partial Summary Judgment by making the showings required under the
<u>McDonnell Douglas</u> framework, i.e., by presenting sufficient

---

[23] Prior to the decisions in <u>Jones</u> and <u>Archie</u>, four district courts had
issued rulings that equated <u>Gross</u>'s "but-for" causation standard with "sole"
causation, but none convincingly explained that view. <u>See</u> <u>Whitaker v. Tennessee</u>
<u>Valley Auth. Bd. of Dirs.</u>, No. 3:08-1225, 2010 WL 1493899, at *9 (M.D. Tenn. Apr.
14, 2010) (unpublished); <u>Huff v. Power Partners, Inc.</u>, No. 3:08-CV-52(CDL), 2010
WL 797201, at *7 (M.D. Ga. Mar. 4, 2010) (unpublished); <u>Wardlaw v. City of</u>
<u>Philadelphia Sts. Dep't</u>, Civil Action Nos. 05-3387, 07-160, 2009 WL 2461890, at
*7 (E.D. Pa. Aug. 11, 2009) (unpublished), <u>aff'd</u>, 378 Fed. Appx. 222 (3d Cir.
2010) (without discussion of why "but-for" cause equals "sole" cause); <u>Culver v.</u>
<u>Birmingham Bd. of Educ.</u>, 646 F. Supp. 2d 1272, 1272 (N.D. Ala. 2009). These
courts may have mistakenly interpreted the portion of <u>Gross</u> holding that the ADEA
did not permit "mixed-motives cases" as requiring the treatment of "but-for"
causation as "sole" causation; however, in the context addressed by the Supreme
Court in <u>Gross</u>, the phrase "mixed-motives cases" refers only to cases that relied
on the burden-of-persuasion-shifting approach endorsed by the judgment in <u>Price</u>
<u>Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989). <u>See</u> <u>Miller v. CIGNA Corp.</u>, 47 F.3d
586, 597 n.9 (3d Cir. 1995) ("'[M]ixed motives' cases are cases not only where
the record would support a conclusion that both legitimate and illegitimate
factors played a role in the employer's decision, but where the plaintiff's
evidence of discrimination is sufficiently 'direct' to shift the burden of proof
to the employer on the issue of whether the same decision would have been made
in the absence of the discriminatory animus. The term of art 'mixed motives' is
thus misleading because it describes only a small subset of all employment
discrimination cases in which the employer may have had more than one motive.").
The Supreme Court banned "mixed-motives cases" under the ADEA in the sense that
it prohibited <u>Price Waterhouse</u> burden-of-persuasion-shifting; however, in so
doing, it did not redefine "but-for" causation as "sole" causation.

evidence for a reasonable fact-finder to conclude that: 1) a prima facie case of age discrimination existed; and 2) Defendant's proffered, non-age-based justification for its action constituted mere pretext for age discrimination.  See Hill, 354 F.3d at 285. Because the EEOC has carried that burden, the Court should deny Defendant's summary judgment motion on this ground, as well.

"To establish a prima facie case, the plaintiff must prove (1) that she is . . . at least 40 years old; (2) that she was qualified for a job for which the employer was seeking applicants; (3) that she was rejected despite her qualifications; and (4) that the position remained open . . . [to] persons with her qualifications outside the protected class [or at least younger than her]." Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). See also Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 n.1 (4th Cir. 1996) (recognizing that decision in O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996), "modif[ied] the [McDonnell Douglas] framework [as used in ADEA cases] . . . by ruling that the worker who replaces an ADEA plaintiff need not be outside the protected class").  For purposes of its summary judgment motion, Defendant challenges the sufficiency of the EEOC's evidence as to the prima facie case only on the second prong, i.e., that Pearson "was qualified" for the Electronic Processes Specialist position. (See Docket Entry 10 at 4-7.)  In this regard, Defendant focuses on

Pearson's admission that he lacked experience repairing 800 MHz Smartzone Simulcast Trunked Radio systems. (See id. at 5.)[24]

This approach fails because, although Defendant's vacancy notice listed experience of that sort as a "Minimum Qualification" (see Docket Entry 16-3 at 1), the record reflects that Defendant did not actually consider such experience a job requirement, including as evidenced by the fact that at least two of the persons it hired, Cheatham and Wilson, "did not have experience in repair and maintenance of 800 MHz Smartzone Simulcast Trunked Radio systems" (Docket Entry 16-3 at 18, 23).[25] Given that and other record evidence – including that two of Defendant's interview panelists recommended Pearson's hiring over Craddock and Wilson because the panelists deemed him more qualified (see Docket Entry 17-4 at 27-28, 33) – the EEOC has raised a material question of fact as to whether Pearson had the qualifications that Defendant legitimately viewed as "required" for the job.

_____

[24] Additionally, Defendant cites one or perhaps two "preferred qualification[s]," as well as certain other forms of experience, Pearson lacked. (See Docket Entry 10 at 5-7.) Under the terms of Defendant's own vacancy notice, those matters did not represent requirements for the position. (See Docket Entry 16-3 at 1.) Moreover, as the EEOC has pointed out (see Docket Entry 17 at 12 n.4), Defendant's actual hiring decisions demonstrate that it did not treat such considerations as prerequisites. These matters thus provide no basis for the Court to grant summary judgment to Defendant on the age discrimination claim.

[25] Defendant objects, based on Ford v. General Motors Corp., 656 F.2d 117, 119 (5th Cir. 1981), to the Court considering evidence that the persons hired by Defendant over Pearson lacked the same qualifications that it assails Pearson for lacking. (Docket Entry 10 at 7.) However, as the EEOC has observed, "[t]he Fourth Circuit has held that 'where application of the qualification . . . element of the prima facie case seems to preclude an otherwise meritorious claim, the plaintiff is free to demonstrate that the employer's qualifications . . . are not in fact "legitimate."'" (Docket Entry 17 at 12 (quoting Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 517 (4th Cir. 2006)) (first ellipses in original).)

Finally, Defendant contends that it "is entitled to judgment even if the court believes that Mr. Pearson was qualified . . . [because it] articulate[d] a legitimate, nondiscriminatory reason for Mr. Pearson's rejection[, i.e., that] it did not find him to be qualified for the position." (Docket Entry 10 at 8.) In this regard, Defendant points to Bechinger Martin's testimony that Pearson "'just did not have radio repair or radio experience other than ham operation'" and "that she rejected Mr. Pearson for reasonable and fair factors other than his age." (Id. (quoting Docket Entry 11 at 138, 178) (internal emphasis omitted).) This contention falls short because the record: 1) conclusively shows that, at least as to Wilson, Defendant did not treat lack of radio repair experience as disqualifying (see Docket Entry 17-4 at 24); and 2) would allow a reasonable fact-finder to conclude that Bechinger Martin admitted she did not hire Pearson because of his age (see Docket Entry 17-5 at 4). In addition, Defendant initially told the EEOC that it based the hiring decision on the interview panel scores, but now has admitted that it hired Wilson over Pearson even though Wilson received a substantially lower score. (Compare Docket Entry 16-4 at 1-2 with Docket Entry 16-3 at 26.)

Under these circumstances, a material question of fact exists as to whether Defendant's stated, "neutral reason [for its hiring decision] was not its true reason, but was a pretext for discrimination," Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 296 (4th Cir. 2010) (internal brackets and quotation marks omitted). See id. at 299 ("[A] trier of fact could

reasonably find that [the defendant's] selective application [of an alleged standard to the plaintiff was] designed to conceal an intent to [discriminate]."); <u>Holland v. Washington Homes, Inc.</u>, 487 F.3d 208, 217 n.7 (4th Cir. 2007) ("[W]hen a company changes its story after it cannot support its initial story, there is an obvious issue of pretext."); <u>Burns</u>, 96 F.3d at 732-33 (holding that direct evidence of a decision-maker's age-based bias can support a finding of pretext). Given the sufficiency of the EEOC's evidence as to its prima facie case and as to pretext, the Court should deny summary judgment to Defendant on the EEOC's age discrimination claim under the <u>McDonnell Douglas</u> indirect proof scheme.[26]

### Failure to Preserve Records

The ADEA authorizes the EEOC to "require the keeping of records necessary or appropriate for the administration of the [ADEA] . . . ." 29 U.S.C. § 626(a). Pursuant to this authority, the EEOC has adopted 29 C.F.R. § 1627.3. In its Complaint, the EEOC alleged that, "[s]ince at least March 2007, Defendant has violated 29 C.F.R. 1627.3(b)(1)(i) . . . by failing to make or preserve records, for the requisite one-year period, pertaining to the failure or refusal to hire Mr. Pearson." (Docket Entry 1 at 3.) As a consequence of this alleged violation, the EEOC seeks

---

[26] The Supreme Court has held that a plaintiff employing the <u>McDonnell Douglas</u> indirect proof method who presents sufficient evidence to make out a prima facie case and to permit a finding of pretext generally can survive summary judgment. <u>See</u> <u>Reeves</u>, 530 U.S. at 146-48. Defendant has not argued that any of the exceptions to this general rule, <u>see</u> <u>id.</u> at 148, apply in this case. Nor has Defendant contended that, after <u>Gross</u>, a "pretext-plus" rule would apply in ADEA cases. Moreover, courts have rejected that notion. <u>See, e.g.</u>, <u>Jones</u>, 617 F.3d at 1280-82. The EEOC's instant showing thus suffices to avoid summary judgment.

only injunctive relief, i.e., an order directing "Defendant to make and preserve records required by the Commission pursuant to . . . 29 C.F.R. 1627.3(b)(1)(i)."  (Id. at 4.)

The EEOC's brief in support of its Motion for Partial Summary Judgment identifies two types of materials as to which it contends Defendant fell short of its record-preservation obligation:  1) "notes taken by Defendant's interview panelists during Pearson's interview" (Docket Entry 16 at 11); and 2) "scoring sheets completed by Frye, Ewing, and [Bechinger] Martin" in connection with Cheatham's interview (id.).  According to the EEOC, "[t]here are no genuine issues of material fact regarding [its] claim that Defendant failed to preserve records relating to the hiring process for the position sought by Pearson."  (Id. at 10.)  Because the EEOC has failed to present sufficient evidence to show the risk of future violations required for injunctive relief and because, for a number of reasons, the record does not establish as a matter of law that Defendant violated the cited regulation, the Court should deny the EEOC's summary judgment motion.

*Entitlement to Injunctive Relief*

"Before a court grants a permanent injunction, the court must first find necessity - a danger of future violations."  Belk v. Charlotte-Mecklenburg Bd. of Educ., 269 F.3d 305, 347 (4th Cir. 2001).  Indeed, "[a]n injunction is a drastic remedy and will not issue unless there is an imminent threat of illegal action. . . . 'One will not be granted against something merely feared as liable to occur at some indefinite time in the future.'"  Bloodgood v.

<u>Garraghty</u>, 783 F.2d 470, 475 (4th Cir. 1986) (quoting <u>Connecticut</u> <u>v. Massachusetts</u>, 282 U.S. 660, 674 (1931)). "'[B]are allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur. <u>The movant must</u> <u>provide proof that the harm has occurred in the past and is likely</u> <u>to occur again</u>, or proof indicating that the harm is certain to occur in the near future.'" <u>Id.</u> at 476 (quoting <u>Wisconsin Gas Co.</u> <u>v. Federal Energy Regulatory Comm'n</u>, 758 F.2d 669, 674 (D.C. Cir. 1985) (emphasis added)).[27]  Assuming that Defendant violated 29 C.F.R. § 1627.3(b)(1)(i) in connection with its record-keeping regarding Pearson, the EEOC has not even alleged, much less offered sufficient proof to establish as a matter of law that any such violation is "likely to occur again," <u>id.</u>[28]

---

[27] Moreover, the Fourth Circuit has indicated that such proof must rise beyond a preponderance to the level of "clear and convincing." <u>Mycalex Corp. of</u> <u>America v. Pemco Corp.</u>, 159 F.2d 907, 912 (4th Cir. 1947) ("When, as is the case here, an injunction . . . [is] sought, a rather clear and convincing showing is required on the part of the plaintiff."), <u>cited with approval in</u> <u>Direx Isreal,</u> <u>Ltd. v. Breakthrough Med. Corp.</u>, 952 F.2d 802, 817 (4th Cir. 1991).

[28] At least one court has explained to the EEOC the necessity of proving likely recurrence in suits requesting injunctive relief related to 29 C.F.R. § 1627.3(b)(1).  <u>See</u> <u>EEOC v. Hendrix Coll.</u>, 53 F.3d 209, 210-11 (8th Cir. 1995) (affirming attorney fee award for defendant and observing:  "The EEOC's lawsuit asked the district court to permanently enjoin [the defendant] from destroying applications and other materials and to order [it] to institute policies consistent with the record-keeping requirements of the ADEA. . . .  The district court stated in its order that the 'sole relief sought is injunctive,' and concluded that the EEOC failed to demonstrate a substantial likelihood that the past conduct alleged to be illegal would recur.  Thus, the court concluded that there was no basis for granting any relief.").

As a result, the Court should not grant summary judgment to the EEOC on its record-preservation claim.[29]

<em>Entitlement to Judgment as a Matter of Law</em>

Apart from its failure to identify any record evidence of a risk that Defendant will violate 29 C.F.R. § 1627.3(b)(1)(i) in the future, the EEOC also has failed to establish as a matter of law that Defendant contravened said regulation in connection with its handling of individual panelists' notes from Pearson's interview and/or scoring sheets as to Cheatham.  In order to assess whether Defendant violated 29 C.F.R. § 1627.3(b)(1) in this case, one first must attempt to decipher the requirements of said provision.  That task presents a significant challenge.  Indeed, a cursory review reveals the inartfulness of the regulation, which states:

> Every <u>employer</u> who, <u>in the regular course of his</u> <u>business</u>, <u>makes, obtains, or uses</u>, <u>any personnel or</u> <u>employment records</u> <u>related to the following</u>, shall . . . keep <u>them</u> for a period of 1 year from the date of the personnel action to which any records relate:
>
> (i) <u>Job applications, resumes, or any other form of</u> <u>employment inquiry</u> whenever submitted to the employer in response to his advertisement or other notice of existing or anticipated job openings, <u>including records pertaining</u> <u>to the failure or refusal to hire any individual</u>,

---

[29] Given the failure of the EEOC's Complaint to allege a likelihood of future violations, it is not clear that this claim should go forward; however, if it does, it would appear that the Court and not a jury would act as the fact-finder:  "[The ADEA] permits a range of equitable and legal remedies to give effect to its purposes.  The right to trial by jury is preserved on legal issues. 29 U.S.C. § 626(c)(2).  When both legal and equitable remedies are demanded, the appropriate method of proceeding requires submission of the case first to the jury to resolve liability and all legal damages.  Thereafter, the court conducts a trial in equity to resolve all issues of equitable relief."  <u>Duke v. Uniroyal, Inc.</u>, 928 F.2d 1413, 1422 (4th Cir. 1991).  <u>See also</u> <u>EEOC v. Corry Jamestown Corp.</u>, 719 F.2d 1219, 1224 (3d Cir. 1983) ("[The EEOC] does not claim that it is entitled to a jury trial for issues unique to the injunctive claims.").

-30-

(ii) Promotion, demotion, transfer, selection for training, layoff, recall, or discharge of any employee,

(iii) Job orders submitted by the employer to an employment agency or labor organization for recruitment of personnel for job openings,

(iv) Test papers completed by applicants or candidates for any position which disclose the results of any employer-administered aptitude or other employment test considered by the employer in connection with any personnel action,

(v) The results of any physical examination where such examination is considered by the employer in connection with any personnel action,

(vi) Any advertisements or notices to the public or to employees relating to job openings, promotions, training programs, or opportunities for overtime work.

29 C.F.R. § 1627.3(b)(1) (emphasis added).

In aspects relevant to this case, this regulation thus appears to require an employer to keep (for a specified one-year period):

1) any personnel or employment record;

2) made, obtained, or used by an employer;

3) in the regular course of the employer's business; and

4) related to a job application, resume, or employment inquiry.

On its face, given the structure and punctuation used, the regulation also seemingly identifies "records pertaining to the failure or refusal to hire any individual" as "includ[ed]" within the terms "[j]ob applications, resumes, or any other form of employment inquiry," id. Because "records pertaining to the failure or refusal to hire any individual" would not fall within any normal understanding of the terms "[j]ob applications, resumes,

-31-

and . . . employment inquir[ies]," one might attempt (as the EEOC apparently does) to make sense of that portion of the regulation by ignoring the regulation's structural and grammatical choices in order to read it as identifying "records pertaining to the failure or refusal to hire any individual" as among the "personnel or employment records" that could be "related to" "[j]ob applications, resumes, and any other form of employment inquiry," id. This approach, however, violates the canon of statutory construction that requires courts to give effect to structure and punctuation. See Gadsby by Gadsby v. Grasmick, 109 F.3d 940, 952 (4th Cir. 1997) ("'[A]t a minimum, [statutory construction] must account for a statute's full text, language as well as punctuation, structure, and subject matter.'" (quoting United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 455 (1993))).

A review of other EEOC regulations only heightens the confusion, in that (in analogous contexts) the EEOC has used much different and simpler language to direct employers to retain records related to hiring decisions; for example, for purposes of enforcing Title VII, the Americans with Disabilities Act, and the Genetic Information Nondiscrimination Act, the EEOC requires that:

> Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later.

29 C.F.R. § 1602.14 (emphasis added).  Had the EEOC wished to exercise its authority under the ADEA to require employers to keep all records related to a hiring decision it seems likely it would have adopted a regulation of this sort, rather than the language of 29 C.F.R. § 1627.3(b)(1).

As another court observed in construing another paragraph of § 1627.3: "At best, the records-retention regulation is ambiguous and subject to various interpretations." <u>Martincic v. Urban Redevelopment Auth. of Pittsburgh</u>, 844 F. Supp. 1073, 1076 (W.D. Pa. 1994) (discussing 29 C.F.R. § 1627.3(b)(3)).  Under such circumstances, the Court should take care "not [to] penalize a party for choosing the narrower and less burdensome interpretation of an ambiguous regulation."  <u>Id.</u>  Given this consideration in particular, the Court should not conclude that the EEOC has shown as a matter of law that Defendant violated 29 C.F.R. § 1627.3(b)(1)(i) by failing to retain panelists' notes from Pearson's interview and scoring sheets from Cheatham's interview.

First, to the extent notes from Pearson's interview are "personnel or employment records," were "ma[d]e[], obtain[ed], or use[d] [by]" Defendant, were "related to" a "job application," and were "records pertaining to the failure or refusal to hire" Pearson, the EEOC has not established conclusively that such records were made, obtained, or used "in the regular course of [Defendant's] business," 29 C.F.R. § 1627.3(b)(1).  In fact, the EEOC has not presented any evidence that the taking of such notes formed a regular part of Defendant's hiring practices.  Moreover,

as set out above in the Facts section, taken in the light most favorable to Defendant (as the Court must at this stage of the proceedings), the record reflects only that one of the four panelists – Gregory – definitely took notes during Pearson's interview.  If the other three interviewers failed to take notes, one reasonably might conclude that note-taking did not constitute part of "the regular course of [Defendant's] business," id.  Instead, Gregory's note-taking arguably reflected a personal practice, rather than Defendant's regular business practice.

Second, to the extent Ewing's, Frye's, and Bechinger Martin's scoring sheets from Cheatham's interview are "personnel or employment records," were "ma[d]e[], obtain[ed], or use[d] [by]" Defendant, were "related to" a "job application," and were made, used, and obtained "in the regular course of [Defendant's] business," the record would not require a finding that they were "records pertaining to the failure or refusal to hire any individual," id.  All of the evidence in the record indicates that Cheatham was Ewing's, Frye's, and Bechinger Martin's first choice for any vacancies.  A fact-finder therefore reasonably could conclude that the decision not to hire Pearson came down to Bechinger Martin's weighing of Pearson's candidacy against that of Craddock and Wilson and thus that scoring sheets completed by Ewing, Frye, and Bechinger Martin about Cheatham fail to qualify as "records pertaining to the failure to hire" Pearson.

Third, the Seventh Circuit has rejected the position taken by the EEOC in this case.  See Rummery v. Illinois Bell Tel. Co., 250

F.3d 553 (7th Cir. 2001).  In Rummery, the defendant terminated the plaintiff during a corporate down-sizing initiative.  See id. at 554-55.  As part of that program, the defendant's personnel evaluated employees and made individual rankings; thereafter, "[a] facilitator gathered these individual ranking sheets and then compiled a final ranking of the at-risk [employees] based on an aggregation and division of the individual rankings."  Id. at 555. The defendant failed to retain "the ranking sheets, manager's notes and evaluation notes that were prepared during the ranking process."  Id. at 558.[30]  However, "the summary sheet containing the final rankings was not [destroyed]."  Id.

The plaintiff argued that the defendant's actions violated an EEOC record-keeping regulation (warranting an "inference that the evidence would have been favorable to him").  See id. (citing 29 C.F.R. § 1602.14, which required retention of "records having to do with" adverse employment decisions).  The Seventh Circuit affirmed the district court's ruling that, "[s]ince [the defendant] retained and produced the final ranking sheet, . . . [it] had complied with the regulation."  Id.  In so doing, the Seventh Circuit emphasized that "[e]mployers are not required to keep every single piece of scrap paper that various employees may create during the termination process.  It is sufficient that the employer retains only the actual employment record itself, not the rough drafts or processes which may lead up to it."  Id. at 558-59.  Similarly, in

---

[30] As in this case, the notes "were informal notes that each participant in the ranking session may have taken."  Rummery, 250 F.3d at 558.

this case, at a minimum, a reasonable fact-finder could conclude that, notwithstanding any failure by Defendant to keep copies of all of the scoring sheets and notes of individual interview panelists, Defendant adequately complied with any requirement to preserve "records pertaining to the failure to hire" Pearson by retaining "a copy of the composite scoring and ranking of the applicants" (Docket Entry 16-4 at 11).

In sum, the EEOC has failed to show that the evidence adduced to this point would require a reasonable fact-finder to rule in its favor on its records-preservation claim; the Court therefore should deny the EEOC's request for summary judgment on that claim.[31]

CONCLUSION

The EEOC has identified competent record evidence sufficient to raise a material question of fact as to its age discrimination claim, but has failed to show an entitlement to judgment as a matter of law on its records-preservation claim.

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion for Partial Summary Judgment (Docket Entry 9) and the EEOC's Motion for Partial Summary Judgment (Docket Entry 15) each be **DENIED**.

/s/ L. Patrick Auld<br>
**L. Patrick Auld**<br>
**United States Magistrate Judge**

December 14, 2010

---

[31] Because the EEOC's right to judgment on its records-preservation claim remains in doubt, the Court should defer consideration of the related arguments raised by the EEOC in support of its request for sanctions against Defendant for "spoilation" of evidence (see Docket Entry 16 at 13-20). Such matters are often better resolved during a trial when the underlying evidentiary record becomes clearer. See, e.g., Mainfreight USA P'ship v. Marco, C/A No. 0:09-563-JFA, 2010 WL 1962671, at *2-3 (D.S.C. May 14, 2010) (unpublished).